**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Melcher, Cynthia Salcido, and Jenny Torres,<br><br>   Plaintiffs,<br><br>vs.<br><br>City of San Luis, Arizona, et al.,<br><br>   Defendants. | No. CV-06-1235 PHX-DGC<br><br><br>**ORDER** |

Defendants City of San Luis, Carlos Bernal, Dolores Concha, Guillermina Fuentes, Luis Luna, Nieves Riedel, Rosa Varella, Jorge Villacana, and Rosalicia Cordova have filed a motion for summary judgment. Dkt. #104. Plaintiffs Paul Melcher, Cynthia Salcido, and Jenny Torres have filed a response. Dkt. #114. Defendants have replied. Dkt. #115. The Court held oral argument on February 29, 2008. Dkt. #119. For the reasons set forth below, the Court will grant Defendants' motion.

**I.    Background.**

   **A.    The Parties' Statements of Fact.**

The facts of this case are set forth in Defendants' statement of facts in support of their motion for summary judgment ("DSOF") and Plaintiffs' statement of facts in opposition to the motion ("PSOF"). Dkt. ##105, 113. Defendants' statement contains 112 numbered paragraphs with citations to the record. Plaintiffs' statement contains 284 paragraphs with citations to the record and an additional 51 factual exhibits. Plaintiffs' statement, however, does not dispute any of the facts set forth in Defendants' statement. Under the Court's Local

Rules, "[e]ach numbered paragraph of the statement of facts set forth in the moving parties' separate statement of facts shall, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing parties' separate statement of facts." LRCiv 56.1(b). By failing specifically to controvert the facts asserted in Defendants' statement, Plaintiffs have admitted those facts. The Court has nonetheless read both parties' statements with care in an effort to identify factual disputes in this case. Where the Court has been unable to identify a disputed fact by comparison of the parties' statements, the Court has accepted Defendants' factual assertions as true.[1]

**B.     The Facts.**

San Luis is a small city in southwestern Arizona. Plaintiff Paul Melcher was employed as Assistant City Administrator, Cynthia Salcido as Deputy City Clerk and Assistant to the City Administrator, and Jenny Torres as Director of the Economic Development Department. Plaintiffs' positions were eliminated when the City Council adopted Resolution 563 on June 9, 2004. Plaintiffs claim that Defendants' elimination of their positions violated 42 U.S.C. § 1983.

Defendants Bernal, Concha, Fuentes, Luna, Riedel, Varella, and Villacana were

---

[1] The Court's task has been made even more difficult by the paucity of factual citations in Plaintiffs' response to Defendants' motion. Local Rule of Civil Procedure 56.1(e) requires that a memorandum of law filed in opposition to a motion for summary judgment "include citations to the *specific paragraph* in the statement of facts that supports factual assertions made in the [memorandum]." (Emphasis added.) The introductory section of Plaintiffs' memorandum contains some citations to the record, but the remainder is largely devoid of citations. Moreover, Plaintiffs' statement of facts is not organized to correspond to arguments made in the memorandum, but instead contains a survey-like recitation of evidence from various depositions and documents, including many citations to entire documents without explanation. *See* PSOF, Dkt.#113, Part III. Where a nonmoving party's opposition fails to cite specific materials in the Court's record, the Court is not required to search the entire record for evidence establishing a genuine issue of material fact. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988). The same is true when the nonmoving party's papers are "extraordinarily difficult to use" due to their size and poor citation. *Keenan v. Allan*, 91 F.3d 1275, 1278-79 (9th Cir. 1996).

1 members of the City Council who voted in favor of Resolution 563. Defendant Cordova was
2 the interim City Administrator. Resolution 563 was prepared and formally proposed by
3 Defendant Cordova.

4       Defendant Cordova had worked as the City's Human Resources Director prior to
5 becoming interim City Administrator in 2004. Ms. Cordova has a Bachelor of Science
6 Degree in Business Administration, a Master's Degree in Business Administration, and a
7 graduate certificate in Public Management. DSOF ¶ 6. Ms. Cordova began working on a
8 new organizational structure for the City in late May of 2004. *Id*. at ¶ 7. She did so after
9 speaking with Defendant Fuentes, who was serving as Mayor and as a member of the City
10 Council. *Id*. at ¶ 20; PSOF ¶ 92. Defendant Fuentes told Ms. Cordova that she believed
11 there was a waste of labor and resources in the City. Ms. Fuentes asked Ms. Cordova to use
12 her human resources skills to better utilize the City's resources. DSOF ¶ 20; PSOF ¶ 92.
13 Defendant Fuentes did not specifically talk to Ms. Cordova about eliminating positions.
14 DSOF ¶ 21. Ms. Cordova also believed that there were wasted labor resources in the City
15 and that she could implement a more effective organization. *Id*. at ¶ 22.

16       Ms. Cordova met with Defendant Fuentes and the City Attorney to discuss her ideas
17 regarding restructuring. *Id*. at ¶ 23. Working with the City Attorney, Ms. Cordova put
18 together a proposed restructuring of city departments and positions that became Resolution
19 563. *Id*. at ¶ 24. The actual language of Resolution 563 was drafted by the City Attorney.

20       Ms. Cordova placed the Resolution in packets for the City Council's June 9, 2004
21 meeting – the first meeting of the newly constituted council. *Id*. at ¶ 30. Ms. Cordova
22 included her own written recommendation that the Resolution be passed to "promote the
23 operation of the City in a more cost efficient manner and . . . achieve a budget savings for
24 fiscal year 2004/2005." *Id*. at ¶ 31. At the meeting, there was no significant discussion of
25 Resolution 563. The Resolution was passed by a vote of 7-0. *Id*. at ¶ 32.

26       Resolution 563 made a number of changes to the San Luis city government. It
27 eliminated the Economic Development Department and the Parks and Recreation
28 Department. *Id*. at ¶ 27. It reorganized the Departments of Administration, Public Works,

Social Services, and Finance. *Id.* at ¶ 28. And it eliminated six positions from the Classification and Salary Plan of the City: Assistant City Administrator, Deputy City Clerk and Executive Staff Assistant, Parks and Recreation Director, Senior Center Director, Economic Development Director, and Office Support Specialist for the Department of Economic Development. *Id.* at ¶ 29. Plaintiffs occupied three of these six positions. *Id.* at ¶ 33.

On June 10, 2004, Ms. Cordova sent a memorandum to each of the Plaintiffs advising them that their positions had been eliminated and their employment was terminated. *Id.* at ¶ 37. In response, Plaintiffs sent memoranda dated June 12, 2004 to Ms. Cordova complaining that their terminations were improper and asking her to review them pursuant to a Personnel Policy specifically pertaining to Reductions in Force. *Id.* at ¶ 38. Ms. Cordova consulted with the City Attorney, who prepared reply letters dated June 18, 2004, for her signature. *Id.* at ¶ 39. The letters rejected Plaintiffs' complaint. *Id.* at ¶ 40.

**C.    The Suit.**

The First Amended Complaint alleges that Resolution 563 violated 42 U.S.C. § 1983. Dkt. #5. Specifically, each of the Plaintiffs contends that the Resolution deprived them of liberty and property interests without due process of law (Counts 5-6), and Plaintiffs Torres and Salcido assert that the Resolution constituted retaliation for their exercise of First Amendment rights (Count 4).[2] *Id.* Before discussing the evidence submitted in support of these claims, the Court will review the relevant standards for summary judgment and address Defendants' argument that they are entitled to absolute legislative immunity.

**II.    Summary Judgment Standard.**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the non-moving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary

---

[2]Counts 1, 2, 3, and 7 have been dismissed by the parties. Dkt. ##110, 118.

1 judgment. The disputed evidence must be "such that a reasonable jury could return a verdict 2 for the non-moving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). 3 Summary judgment may be entered against a party who "fails to make a showing sufficient 4 to establish the existence of an element essential to that party's case, and on which that party 5 will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.   Absolute Legislative Immunity.**

Absolute immunity from suit attaches to all actions taken in the sphere of legitimate legislative activity. *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). "Whether an act is legislative turns on the nature of the act, rather than on the motive or the intent of the official performing it." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). Thus, in determining whether the individual Defendants are entitled to immunity in this case, the Court must ask "whether, stripped of all considerations of intent and motive, [Defendants'] actions were legislative." *Id.* at 55. The Court will first address the council-member Defendants, then Defendant Cordova, then the City.

**A.   Immunity of the City Council.**

The Court must consider four factors in determining whether Resolution 563 was a legislative act: (1) whether the act involves *ad hoc* decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether the act bears all the hallmarks of traditional legislation. *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003) (citations omitted). Applying these factors, the Court concludes that the Resolution was a legislative act and that the seven Defendants who were council members are entitled to legislative immunity.

First, Resolution 563 constituted the formulation of city policy, not an act of *ad hoc* decisionmaking. The Resolution restructured city government, eliminating two departments and reorganizing four. The Resolution eliminated six positions and affected the City's budget and management structure. The Resolution was initiated by the interim City Administrator who had concerns about the City's efficiency and budget, and after the

1. Administrator had consulted with the Mayor who had the same concerns. Ms. Cordova's
2. conversations with the Mayor did not address the elimination of any positions, and Ms.
3. Cordova brought her educational and human resources training to bear in recommending the
4. restructuring. This was the formulation of policy, not an *ad hoc* decision concerning
5. Plaintiffs' jobs.
6. Second, Resolution 563 was not limited to a few individuals. It eliminated
7. departments, reorganized other departments, and eliminated more positions than those held
8. by the three Plaintiffs. In *Bogan*, the City of Fall River, Massachusetts adopted a similar
9. measure that froze salaries, eliminated positions, and eliminated a department of which the
10. plaintiff was the sole employee. *Bogan*, 523 U.S. at 47. The Supreme Court had "little
11. trouble concluding" that the act was legislative. *Id.* at 55.
12. Third, Resolution 563 was a formal council resolution, drafted by the City Attorney,
13. proposed by the interim City Administrator, presented at a public meeting, moved and
14. seconded by members of the Council, and approved by a unanimous vote.
15. Finally, Resolution 563 bore the hallmarks of traditional legislation. It was formally
16. adopted as a legislative act by the City Council. It concerned organization and structure of
17. departments and reduction of the City's budget. As the Ninth Circuit has recognized, "the
18. decision to eliminate a position for budgetary reasons is clearly legislative." *Bechard v.*
19. *Rappold*, 287 F.3d 827, 829 (9th Cir. 2002).
20. Plaintiffs' arguments that Resolution 563 was not a legislative act focus almost
21. entirely on Defendants' motives and political alliances. Plaintiffs note Defendant Concha's
22. statement that a department was eliminated to get rid of Plaintiff Torres' position and Ms.
23. Riedell's control of the council and her desire to eliminate Ms. Salcido's job. Plaintiffs also
24. argue that there were not legitimate budgetary reasons for the Resolution. These arguments
25. focus on Defendants' motives and intentions, an inquiry not permitted under *Bogan*.
26. The Court accordingly concludes that the seven Defendants who were members of the
27. City Council – Bernal, Concha, Fuentes, Luna, Riedel, Varella, and Villacana – are entitled
28. to legislative immunity. *See Bogan*, 523 U.S. at 49-55.

### B. Immunity of Defendant Cordova.

"[O]fficials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Id*. at 55. An individual's actions are legislative in nature when they are "integral steps in the legislative process." *Id*. Ms. Cordova clearly played an integral role in the creation and passage of Resolution 563. She decided how to structure the Resolution, worked with the City Attorney to create it, and presented the Resolution to the City Council with her recommendation as interim City Administrator that the Resolution be adopted. DSOF ¶¶ 20-24, 31. Ms. Cordova is entitled to legislative immunity for her role in the Resolution's passage.

### C. Immunity of the City.

The Court cannot agree with Defendants' argument that the City is entitled to legislative immunity. Supreme Court decisions "make it quite clear that, unlike various government officials, municipalities do not enjoy immunity from suit – either absolute or qualified – under § 1983." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993); *see also Owen v. City of Independence, Mo.*, 445 U.S. 622, 657 (1980) ("holding that municipalities have no immunity from damages liability flowing from their constitutional violations[.]"). Defendants argue that this Court should follow *Hollyday v. Rainey*, 964 F.2d 1441 (4th Cir. 1992), and hold the City immune, but the majority opinion in *Hollyday* provides virtually no analysis to support its holding. *Id*. at 1443. The concurrence, by contrast, provides a thoughtful explanation of why legislative immunity is not enjoyed by government entities. *Id*. at 1444-45. The Court will not rely on *Hollyday* and disregard established Supreme Court statements in this area.

### D. Effect of a Finding of Legislative Immunity.

Plaintiffs have sued the City Council members and Ms. Cordova in their individual and official capacities. Legislative immunity shields these Defendants from liability only in their individual capacities. *See Board of County Com'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 677 n.1 (1996) ("[legislative] immunity from suit under § 1983 extends to public servants only in their *individual* capacities[.]" (emphasis in original)).

- 7 -

1  Thus, the Council members and Ms. Cordova may still be sued in their official capacities.

2  "A suit against a governmental officer in his official capacity is equivalent to a suit 3 against the governmental entity itself." *Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th 4 Cir.1991); *see also Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 n. 55 (1978) ("official-5 capacity suits generally represent only another way of pleading an action against an entity 6 of which an officer is an agent[.]"); *Kentucky v. Graham,* 473 U.S. 159, 165 & 167 n. 14 7 ("[t]here is no longer a need to bring official capacity actions against local government 8 officials [because] under *Monell*, . . . local government units can be sued directly). 9 Generally, a municipality may be sued for constitutional torts committed by its officials 10 according to an official policy, practice, or custom. *Monell,* 436 U.S. at 690-91. In 11 particular, "municipal liability under § 1983 attaches where . . . a deliberate choice to follow 12 a course of action is made from among various alternatives by the official or officials 13 responsible for establishing final policy with respect to the subject matter in question." 14 *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality); *see City of St. Louis v.* 15 *Praprotnik*, 485 U.S. 112, 123 (plurality) ("[O]nly those municipal officials who have 'final 16 policymaking authority' may by their actions subject the government to § 1983 liability."). 17 The City's liability, therefore, turns on the actions of those who officially considered and 18 passed Resolution 563. *See Larez,* 946 F.2d at 647 ("the fate of the City['s liability under 19 § 1983] hinges on [a public official's] official capacity liability."). The Court accordingly 20 will consider whether the actions of the individual Defendants give rise to City liability for 21 the First Amendment and due process violations alleged in the complaint.

22 **IV.   First Amendment Claims of Torres and Salcido (Count 4).**

23  To establish a claim for First Amendment retaliation under § 1983, Plaintiffs must 24 show that (1) they engaged in expressive conduct that addressed a matter of public concern; 25 (2) Defendants, as government officials, took an adverse action against them; and 26 (3) Plaintiffs' expressive conduct was a substantial or motivating factor for the adverse 27 action. *Alpha Energy Savers v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2004) (citation omitted). 28 If Plaintiffs meet this burden, Defendants can escape liability under *Mt. Healthy City Sch.*

- 8 -

*Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1997), by showing that they would have taken the same action in the absence of Plaintiffs' expressive conduct. *Id.* at 287.

### A.     Claim of Plaintiff Torres.

Alex Ruiz is a controversial figure in the politics of San Luis, having been in and out of city government on a number of occasions. Mr. Ruiz apparently is a political opponent of some of the Defendants. Plaintiff Torres spoke in favor of Mr. Ruiz at a City Council meeting in 2001, and contends that Resolution 563 was passed three years later in retaliation for that speech. Plaintiff Torres also contends that the Resolution was passed because Defendants dislike her mother, who is also their political opponent, and therefore interfered with her First Amendment right to associate with her mother.

Defendants do not dispute that Plaintiff Torres satisfies the first element of a First Amendment claim – that she engaged in expressive conduct addressed to a matter of public concern. Nor do Defendants contest the second element – that Resolution 563 constituted an adverse action against Ms. Torres. Rather, Defendants argue that Plaintiff Torres has failed to present sufficient evidence on the third element – that her 2001 statement in favor of Mr. Ruiz was a substantial or motivating factor in the passage of Resolution 563.

Plaintiff Torres has presented evidence that some Defendants knew of her 2001 statement in support of Mr. Ruiz.[3] Even if the Court assumes that all Defendants knew of

---

[3] This is not true of all Defendants. Plaintiff Torres has presented no evidence that Defendants Cordova, Fuentes, Varella, or Villacana knew of the 2001 statement. This is an independent basis for summary judgment in favor of the City and these Defendants in their official capacities on Torres' claim. *See Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751 (9th Cir. 2001). Plaintiff Torres asserts that Defendant Concha knew of the 2001 statement (PSOF ¶ 57), but the cited portions of the record do not support this assertion. Ms. Concha testified during her deposition that she did not remember whether Plaintiff Torres spoke at the 2001 meeting. Ex. 113, Att. 2, at 42:9-12. Plaintiffs' counsel presented Ms. Concha with minutes of the meeting during her deposition, and Ms. Concha confirmed from the minutes that Ms. Torres had in fact spoken in favor of Mr. Ruiz at the meeting (*see id.* at 43:16-19), but Ms. Concha never testified that she remembered this fact when she voted in favor of Resolution 563 three years later. Plaintiffs point to a statement in Defendant Concha's deposition where she appears to admit that Ms. Torres' position was eliminated in order to replace her with another person (Dkt. #113, Att. 2 at 158:16-59:9), but this

- 9 -

the 2001 statement, however, this fact alone is not sufficient to withstand summary judgment on Torres' First Amendment claim. Plaintiffs asserting First Amendment claims under § 1983 must show causation – that the protected conduct was a substantial or motivating factor in the adverse employment action. As the Ninth Circuit has explained, "plaintiffs are required . . . to provide more than 'mere evidence' that the defendants were aware of [plaintiff's] expressive conduct" to meet this burden. *Alpha Energy Savers*, 381 F.3d at 929 (citation omitted).

Plaintiffs argue that causation is shown by Defendants' participation in efforts to recall Ms. Torres' mother from the City Council in 2001 and 2003. The fact that some Defendants were political opponents of Ms. Torres' mother and sought to have her recalled on two occasions says nothing specific, however, about whether the 2001 statement by Plaintiff Torres was a substantial or motivating factor in the passage of Resolution 563 in 2004. Although Plaintiffs assert that the recall efforts against Ms. Torres' mother were based in part on the mother's support of Mr. Ruiz, Plaintiffs must do more. They must connect the passage of Resolution 563 to the specific First Amendment activity in question – Plaintiff Torres' statement at the 2001 council meeting – and Defendants recall efforts with respect to Ms. Torres' mother simply do not address that event. *See Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) (there must be a nexus between the exercise of First Amendment rights and the alleged retaliatory action to survive summary judgment on a § 1983 claim).

Plaintiffs also assert that the fact that Resolution 563 was passed at the first meeting after Defendants all were elected to the City Council supports an inference that it was passed in retaliation for Ms. Torres' 2001 statement. The Court does not agree. Three years is too long to make a causal connection on the basis of timing. *See Clark County Sch. Dist. V. Breeden*, 532 U.S. 268, 273-74 (2001) (period of 20 months "suggests, by itself, no causality

deposition excerpt does not say that the action was taken as the result of Ms. Torres' statement in 2001 or any other First Amendment activity.

- 10 -

at all"). Even if some inference could be drawn from the fact that Defendants adopted Resolution 563 at their first full council meeting, that inference is rendered implausible by other facts in the record. Defendant Bernal, one of the council members who voted in favor of the Resolution and supposedly in league with the other Defendants, also spoke in favor of Mr. Ruiz at the 2001 council meeting. DSOF ¶92. So did Maria Luz Hoyas, the woman who supposedly was hired to fill Ms. Torres' position after she was terminated. *Id*. at ¶¶90-91. Moreover, Plaintiff Melcher admitted that he read articles in 2003 or 2004 in which Ms. Fuentes stated that Ms. Torres' position should be eliminated for financial reasons, not because of her support of Mr. Ruiz. *Id*. at ¶¶42, 45. Given these facts and the three-year hiatus between Ms. Torres' single statement at the council meeting and the passage of Resolution 563, Plaintiffs have failed to present evidence from which a reasonable jury could conclude that the statement was a substantial or motivating factor for passage of the Resolution. Defendants are therefore entitled to summary judgment on Plaintiff Torres' First Amendment claim.[4]

The Court must also enter summary judgment on Plaintiff Torres' associational rights claim. Plaintiff Torres claims that Defendants eliminated her position in retaliation for her mother's political conduct and that this action interfered with her First Amendment right to associate with her mother. Under Ms. Torres' own authority, however, an interference with associational rights is actionable only if it is "direct and substantial" or "significant." *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2nd Cir. 1996) (citations omitted). Plaintiff Torres has presented no evidence that the passage of Resolution 563 directly, substantially, or significantly interfered with her association with her mother.

---

[4] Even if the Court found that Plaintiff Torres had raised a question of fact as to whether her 2001 statement was a substantial and motivating factor, the Court would grant summary judgment because Defendants have established a *Mt. Healthy* defense. As footnote 3 demonstrates, Plaintiff failed to present evidence that a majority of the council members knew of her 2001 statement. Given this failure, the Court must conclude that a majority of the council voted without regard to her 2001 statement and would have passed Resolution 563 even if the statement had never been made. *See Mt. Healthy*, 429 U.S. at 287.

- 11 -

**B.     Claim of Plaintiff Salcido.**

Plaintiff Salcido claims that Resolution 563 was adopted in retaliation for her having served as the named plaintiff in a 2003 lawsuit that prevented Defendant Riedel from running for Mayor of San Luis. As with the claim of Plaintiff Torres, Defendants do not contend that Plaintiff Salcido has failed to meet the first or second prongs of a § 1983 First Amendment claim. They instead contend that Plaintiff Salcido has failed to present evidence to establish a triable question of fact on the third element – that her role as a named plaintiff in the 2003 lawsuit was a substantial or motivating factor in the passage of Resolution 563. Defendants also argue that the Resolution would have passed even in the absence of Plaintiff Salcido's exercise of her First Amendment rights. *See Mt. Healthy*, 429 U.S. at 287. In order to address these arguments, the Court will consider Salcido's evidence against each Defendant.

**1.     Rosalicia Cordova.**

Ms. Cordova knew that Plaintiff Salcido had been the named plaintiff in a lawsuit challenging Defendant Riedel's candidacy for mayor (PSOF ¶ 116), but Plaintiffs have presented no evidence that Ms. Cordova took this fact into account when proposing Resolution 563. Plaintiffs argue that the connection can be inferred from the timing of Ms. Cordova's actions – that Resolution 563 was approved at the first City Council meeting after Defendant Riedel and her alleged supporters were elected to the City Council. As with the claim of Plaintiff Torres, however, this fact alone does not create a triable question of fact with respect to Ms. Cordova.

As noted above, the evidence concerning Ms. Cordova's preparation of Resolution 563 is that she believed the City could be more efficient in its use of its labor resources. There is no evidence to suggest that Defendant Cordova cared about the lawsuit against Defendant Riedel. There is no evidence that the lawsuit had any effect upon Defendant Cordova. There is no evidence that Defendant Cordova took adverse actions directed at Ms. Salcido when Ms. Cordova was in charge of the human resources department. And approximately 12 months elapsed between Salcido's involvement in the lawsuit and the passage of Resolution 563. Given these facts, the Court concludes that Plaintiff Salcido has

1 not presented sufficient evidence for a reasonable jury to conclude that the lawsuit was a 2 substantial or motivating factor in Ms. Cordova's decision to propose Resolution 563. The 3 Court also concludes that the evidence shows Ms. Cordova would have taken the action 4 regardless of Plaintiff Salcido's involvement in the lawsuit, establishing a causation defense. 5 *Mt. Healthy*, 429 U.S. at 287. Ms. Cordova is entitled to summary judgment in her official 6 capacity on the First Amendment claims of Plaintiff Torres and Salcido.[5]

### 2. Carlos Bernal.

Defendant Bernal testified that he supported Resolution 563 because he understood the City was in a financial crisis and that the restructuring of the Resolution was being done to save city funds. PSOF ¶ 9. Indeed, Plaintiff Melcher had read articles or flyers in advance of the passage of Resolution 563 in which Defendant Bernal specifically stated that Melcher's and Torres' positions should be eliminated for financial reasons. DSOF ¶¶ 42, 45.

Plaintiffs present evidence, however, that Defendant Bernal not only was aware of Plaintiff Salcido's lawsuit, but was critical of it. PSOF ¶ 35. Plaintiffs also note that all seven members of the City Council were in the same political group, that Resolution 563 was passed at the first City Council meeting where all seven participated, and that there was virtually no conversation before the City Council passed the Resolution. *Id.* at ¶¶ 19, 31. When all of this evidence is taken together, particularly Defendants Bernal's criticism of Plaintiff Salcido's lawsuit, the Court finds it sufficient to raise a question of fact as to whether the lawsuit was a substantial or motivating factor in Defendant Bernal's vote for the Resolution. *See Alpha Energy Savers*, 381 F.3d at 929 (causation can be inferred from the fact that defendant expressed opposition to the protected First Amendment action).

---

[5]Throughout this section IV, the Court explains why the individual defendants are entitled to summary judgment in their official capacities and why the City, therefore, is also entitled to summary judgment. The Court does not address Defendants in their individual capacities because they are entitled to legislative immunity. The Court notes, however, that the discussion in this section would apply equally to the individual Defendants' personal liability. Thus, for those Defendants where Plaintiffs have failed to present sufficient evidence, summary judgment would be warranted even if they were not entitled to legislative immunity.

- 13 -

For the reasons explained below, however, the Court concludes that Defendant Bernal is entitled to summary judgment in his official capacity because he and the other Defendants have established a *Mt. Healthy* defense. As will be shown, a majority of the City Council would have voted in favor of Resolution 563 regardless of Plaintiff Salcido's participation in the lawsuit. Plaintiff Salcido therefore cannot show that the lawsuit was the reason for her injury. *Mt. Healthy*, 429 U.S. at 287.

### 3. Dolores Concha.

Defendant Concha testified that she voted in favor of Resolution 563 because it was in the best interests of the City. DSOF ¶ 106. Plaintiffs have presented evidence that Ms. Concha was aware of Plaintiff Salcido's lawsuit (PSOF ¶ 54), but Plaintiffs have failed to present sufficient additional evidence of causation. Unlike Defendant Bernal, Plaintiffs have not presented evidence that Defendant Concha was critical of the lawsuit. Although Defendants contend that the timing of Resolution 563 can provide the necessary causation, the Court does not agree. Approximately one year passed between Salcido's legal action and the adoption of Resolution 563. And as already noted, Resolution 563 was not targeted at Plaintiff Salcido. It involved a broad restructuring of City government and the elimination of six positions. The Court concludes that Plaintiffs have not presented sufficient evidence for a reasonable jury to conclude that Salcido's lawsuit was a substantial or motivating factor in Concha's vote for Resolution 563. Defendant Concha is entitled to summary judgement in her official capacity on the First Amendment claim of Plaintiff Salcido.

### 4. Guillermina Fuentes.

Plaintiffs have presented evidence that Defendant Fuentes was aware of Salcido's lawsuit. PSOF ¶ 144. Plaintiffs claim to have satisfied the requirement of causation by asserting that Defendant Fuentes said on several occasions that she would eliminate Plaintiff Salcido's position. The evidence presented by the parties, however, does not support Plaintiff's claim that Fuentes was motivated by the lawsuit.

Plaintiff Salcido's lawsuit was filed on July 16, 2003. PSOF Att. 33. Defendant Fuentes' statements about firing Salcido were made *before* this date and thus could not have

1 been in retaliation for the lawsuit. For example, Plaintiff Salcido testified that she became
2 insecure about her job in the Spring of 2003 after hearing that Defendant Fuentes intended
3 to eliminate her position. DSOF ¶58, Ex. 3 at 129. The Yuma newspaper reported on April
4 14, 2003 – more than three months before the lawsuit – that Defendant Fuentes intended to
5 eliminate the positions of Plaintiffs Melcher and Salcido. PSOF Att. 32. The newspaper
6 suggested that the positions would be eliminated as unnecessary to city government. *Id.*
7 Plaintiff Melcher likewise testified that Defendant Fuentes' reason for wanting to eliminate
8 his and Salcido's positions was that she considered them to be unnecessary. PSOF ¶54, Ex.
9 16 at 147-48. Defendant Luna testified that she heard Fuentes say on a number of occasions
10 that Salcido's position should be eliminated, but Luna's deposition transcript makes clear that
11 these statements were made before the April 14, 2003 newspaper article and well before the
12 lawsuit. PSOF Att. 11 at 132-33.

13 The evidence presented by the parties thus shows that Defendant Fuentes had publicly
14 stated her intention to eliminate Salcido's position before Salcido ever engaged in the
15 protected activity of filing the lawsuit against Riedel, and that Fuentes intended to do so
16 because she considered the position unnecessary. The evidence does not support Plaintiff
17 Salcido's claim that she Fuentes voted for Resolution 563 because of the lawsuit.

18 **5. Luiz Luna.**

19 The record indicates that Defendant Luna knew of Plaintiff Salcido's lawsuit.
20 Dkt. #113, Att. 10 at130:23-131:1. As with Defendant Concha, however, Plaintiffs have not
21 presented sufficient evidence to link the lawsuit to Defendant Luna's vote for Resolution
22 563. Plaintiffs' statement of facts asserts that Defendant Luna had a good working
23 relationship with Salcido and voted in favor of Resolution 563 because he took directions
24 from the interim City Administrator, Ms. Cordova. PSOF ¶¶ 200, 202. Defendant Luna is
25 entitled to summary judgment in his official capacity.

26 **6. Nieves Riedel.**

27 Defendant Riedel testified that she voted in favor of Resolution 563 because Ms.
28 Cordova stated that it was necessary for financial reasons. PSOF ¶ 227. She further stated

- 15 -

that she viewed the Resolution as being in the best interests of the City. DSOF ¶ 110.

Defendant Riedel clearly knew of Defendant Salcido's lawsuit against her. The fact that the lawsuit was directed at Defendant Riedel and prevented her from running for mayor is sufficient to raise a question of fact as to whether the lawsuit was a substantial or motivating factor in her subsequent vote in favor of Resolution 563. As explained below, however, Plaintiffs have failed to establish that the lawsuit was a substantial or motivating factor for a majority of the City Council, and Defendant Riedel is therefore entitled to summary judgment in her official capacity under *Mt. Healthy*.

### 7. Rosa Varella.

Defendant Varella testified that she voted in favor of Resolution 563 because it was recommended by Ms. Cordova. PSOF ¶ 263. She believed that Ms. Cordova knew more about City finances than she did. DSOF ¶ 107. Although Ms. Varella was aware of the lawsuit (PSOF ¶ 272), Plaintiff Salcido has failed to present sufficient additional evidence of causation. Plaintiff has not shown that Defendant Varella criticized the lawsuit as did Defendant Bernal or that she was the target of the lawsuit as was Defendant Riedel. Rather, as with Defendants Cordova, Concha, Fuentes, and Luna, the record does not contain sufficient evidence for a reasonable jury to conclude that the lawsuit was a substantial or motivating factor for Varella's vote. Defendant Varella is therefore entitled to summary judgment in her official capacity.

### 8. Jorge Villacana.

Defendant Villacana testified that he voted in favor of the Resolution because it was recommended by Ms. Cordova. DSOF ¶ 109. Mr. Villacana testified that he did not recall Plaintiff Salcido's lawsuit, a fact Plaintiff does not controvert. PSOF ¶ 282. Defendant Villacana therefore is entitled to summary judgment in his official capacity. *Keyser*, 265 F.3d at 751.

### 9. *Mt. Healthy* Defense.

As the above discussion makes clear, Plaintiffs have presented sufficient evidence for a reasonable jury to find that the lawsuit of Ms. Salcido was a substantial or motivating factor

- 16 -

1 only with respect to Defendants Bernal and Riedel. This leaves five members of the City
2 Council who did not act on the basis of Salcido's protected conduct. Because this majority
3 of the City Council would have approved Resolution 563 regardless of whether Ms. Salcido
4 brought her lawsuit against Defendant Riedel, Defendants have established their right to the
5 *Mt. Healthy* defense. *See Coogan v. Smyers*, 134 F.3d 479, 485 (2nd Cir. 1998) ("if a
6 majority of defendants prove that their individual vote against the plaintiff would have been
7 the same irrespective of the plaintiff's protected conduct, then the defendants as a group
8 cannot be held liable, and no individual defendant, even one whose proof falls short, can be
9 so held because causation is absent").

### C. City's First Amendment Liability.

As noted above, the City's liability turns on the actions of those who officially considered and passed Resolution 563. *See Larez,* 946 F.2d at 647 ("the fate of the City['s liability under § 1983] hinges on [a public official's] official capacity liability."). Because Plaintiffs have failed to establish the liability of the individual Defendants in their official capacities for violation of the First Amendment rights of Plaintiffs Torres and Salcido, the Plaintiffs have failed to established the City's liability as well. Stated differently, because Plaintiffs' protected activities have not been shown to be a substantial or motivating factor for a majority of the City's policymakers, they have not been shown to be a substantial or motivating factor for the City. The Court will enter summary judgment in favor of the City on Plaintiffs' First Amendment claims.

### V. Due Process – Liberty (Count 6).

Plaintiffs claim that Resolution 563 deprived them of liberty interests without due process of law. The Supreme Court has held, however, that an individual who suffers loss at the hands of a governmental entity may assert a liberty-interest claim only when the government makes a "charge against him that might seriously damage his standing and association in the community." *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972). As the Ninth Circuit has explained, "a charge which infringes one's liberty can be characterized as an accusation or label given the individual by his employer which belittles his worth and

- 17 -

1  dignity as an individual and, as a consequence, is likely to have severe repercussions *outside*
2  of professional life." *Stretten v. Wadsworth Veteran's Hosp.*, 537 F.2d 361, 366 (9th Cir.
3  1976) (emphasis added).

4  Plaintiffs have presented no evidence that Defendants made accusations against them
5  that had severe repercussions outside their professional lives. Defendants therefore are
6  entitled to summary judgment on this claim. *See Kelley v. City of Mesa*, 873 F.Supp. 320,
7  331-32 (D.Ariz. 1994) (plaintiff who lost employment with City cannot make a liberty-
8  interest claim).

## VI. Due Process – Property (Count 6).

Plaintiffs assert that their property interests in their jobs were eliminated without due process of law. Specifically, the First Amended Complaint asserts that Plaintiffs were terminated "without any pre or post termination appeal." Dkt. #5, ¶ 41. Plaintiffs' response to Defendants' motion likewise argues that Defendants wrongfully denied them "pre-termination hearings" or "full-blown administrative hearing[s] and judicial review post-termination." Dkt. #114 at 12.

Although due process normally requires some kind of hearing prior to the deprivation of a significant property interest, "[w]hen the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." *Halverson v. Skagit County*, 42 F.3d 1257, 1260 (9th Cir. 1994) (quotation and citations omitted). In seeking to define when a particular government action is legislative, the Ninth Circuit focuses on the character of the action, rather than its label. *Id.*

As discussed in part III of this order, the City Council's adoption of Resolution 563 was a legislative act. The resolution reorganized four departments, eliminated two departments, and eliminated six job classifications. It was proposed by the interim City Administrator and followed normal legislative procedures, including the usual legislative formalities. It was adopted by unanimous vote at a public meeting of the City Council. The Resolution was not an administrative action focused solely on the three Plaintiffs. Because

- 18 -

the action was legislative, Plaintiffs' claim that they were wrongfully denied pre- and post-termination hearings lacks merit. *Id.*; *see Dawson v. Milwaukee Hos. Auth.*, 930 F.2d 1283, 1286 (7th Cir. 1991) ("[for] a legislative rather than adjudicative decision . . . the due process clause does not require individual hearings before a government makes decisions that affect the interests of persons in the aggregate.") (citations omitted); *Bakalich v. Vill. of Bellwood*, No. 03-C-1784, 2006 WL 1444893, at *7 (N.D. Ill. May 17, 2006).[6]

**VII.  Conclusion.**

Counts 1, 2, 3, and 7 of the First Amended Complaint have been dismissed by the parties. The individual Defendants are entitled to legislative immunity and therefore are insulated from § 1983 liability, in their individual capacities, with respect to the remaining counts. The Court has not found sufficient evidence that the individual Defendants committed a constitutional violation in their official capacities with respect to Counts 4, 5, and 6. Accordingly, the City may not be held liable for the official-capacity actions of the individual Defendants. *See Larez,* 946 F.2d at 646.

---

[6] Plaintiffs' counsel asserted at oral argument that the City failed to follow its own procedures for a reduction in force by failing to prepare a plan for implementation of the reduction. But Plaintiffs do not complain about the lack of a plan in their First Amendment Complaint, which instead asserts that Plaintiffs lost their jobs "without any pre or post termination appeal." Dkt. #5, ¶ 41. Even if Plaintiffs' complaint had included a lack-of-plan claim, Plaintiffs have provided no authority for the proposition that a city-policy right to a reduction-in-force plan constitutes a due process right cognizable as a constitutional violation. The only due process case cited by Plaintiffs in their response to the motion for summary judgment – *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) – holds "that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the Ohio statute." *Id.* at 547-48. This authority certainly does not support Plaintiffs' suggestion that they have a due process right to a reduction-in-force plan. One might argue that such a right arose as a matter of contract based on the City's policies, but Plaintiffs have asserted no such claim in this case.

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. #104) is **granted**.

2. The Clerk is directed to terminate this matter.

DATED this 11th day of March, 2008.

_____
David G. Campbell
United States District Judge